No. 22-35986

# In the United States Court of Appeals for the Ninth Circuit

SEATTLE PACIFIC UNIVERSITY,

Plaintiff-Appellant,

v.

ROBERT FERGUSON, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF WASHINGTON,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Washington
Honorable Robert J. Bryan
(3:22-cv-05540-RJB)

## APPELLANT'S REPLY BRIEF

NATHANIEL L. TAYLOR
ABIGAIL ST. HILAIRE
ELLIS LI & MCKINSTRY, PLLC
1700 7th Ave., Suite 1810
Seattle, WA 98101
(206) 682-0565
ntaylor@elmlaw.com

*Not admitted to the D.C. bar; admitted to
the N.Y. bar; supervised by licensed D.C.
bar members.*

LORI H. WINDHAM
JOSEPH C. DAVIS
DANIEL D. BENSON
LAURA WOLK SLAVIS
DANIEL M. VITAGLIANO*
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, DC 20006
(202) 955-0095
lwindham@becketlaw.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 2

I.  SPU has standing and its case is ripe.......................................... 2

   A. SPU has an injury in fact for a pre-enforcement challenge. ................................................................................ 2

   B. SPU has an injury in fact for its investigation and retaliation claims................................................................... 9

   C. SPU's injuries are redressable in federal court. ........................... 13

   D. SPU's claims are ripe. ........................................................... 19

II. *Younger* abstention does not apply. ...................................... 21

   A. This is not a quasi-criminal enforcement proceeding. ......................................................................... 22

   B. Even if the AG's investigation were a quasi-criminal proceeding, it is not "ongoing." ..................................... 26

   C. The AG's investigation leaves SPU unable to raise a constitutional challenge. ................................................... 28

CONCLUSION ....................................................................................... 30

CERTIFICATE OF COMPLIANCE ....................................................... 31

CERTIFICATE OF SERVICE................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis,*
   6 F.4th 1160 (10th Cir. 2021) ............................................... 8

*Alaska Right to Life PAC v. Feldman,*
   504 F.3d 840 (9th Cir. 2007) ............................................... 20

*Glanton ex rel. ALCOA Prescription Drug Plan v.
   AdvancePCS,*
   465 F.3d 1123 (9th Cir. 2006) ............................................ 17

*Amanatullah v. Colorado Board of Medical Examiners,*
   187 F.3d 1160 (10th Cir. 1999) .......................................... 28

*Applied Underwriters v. Lara,*
   37 F.4th 579 (9th Cir. 2022) ................................... 21, 25, 26

*Arizona v. Yellen,*
   34 F.4th 841 (9th Cir. 2022) ................................................ 7

*ASARCO v. Kadish,*
   490 U.S. 605 (1989) ........................................................... 18

*Balogh v. Lombardi,*
   816 F.3d 536 (8th Cir. 2016) ............................................. 8-9

*Benavidez v. County of San Diego,*
   993 F.3d 1134 (9th Cir. 2021) ........................................... 29

*Bishop Paiute Tribe v. Inyo County,*
   863 F.3d 1144 (9th Cir. 2017) ...................................... 19, 20

*Borowski v. Kean Univ.,*
   68 F.4th 844 (3d Cir. 2023) ............................................... 25

*Braidwood Mgmt. v. EEOC,*
   ___ F.4th ___, 2023 WL 4073826 (5th Cir. June 20, 2023) .............. 6, 7

*Bristol-Myers Squibb Co. v. Connors*,
   979 F.3d 732 (9th Cir. 2020)................................................ 23, 24, 25

*Cal. Pro-Life Council v. Getman*,
   328 F.3d 1088 (9th Cir. 2003)............................................... 3

*Cal. Trucking Ass'n v. Bonta*,
   996 F.3d 644 (9th Cir. 2021)................................................ 6

*Carrico v. City & County of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011)............................................... 9

*Citizens for Free Speech v. County of Alameda*,
   953 F.3d 655 (9th Cir. 2020)............................................... 23

*City & County of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018)............................................... 9

*Cook v. Harding*,
   879 F.3d 1035 (9th Cir. 2018).............................................. 25

*Duquesne Univ. of the Holy Spirit v. NLRB*,
   947 F.3d 824 (D.C. Cir. 2020) ............................................. 10

*Google v. Hood*,
   822 F.3d 212 (5th Cir. 2016)............................................... 27

*Guillemard-Ginorio v. Contreras-Gómez*,
   585 F.3d 508 (1st Cir. 2009) .............................................. 27

*Hall v. Florida*,
   572 U.S. 701 (2014) ....................................................... 3-4

*Italian Colors Rest. v. Becerra*,
   878 F.3d 1165 (9th Cir. 2018)........................................... 4, 8, 16

*Juidice v. Vail*,
   430 U.S. 327 (1977) ....................................................... 28

*Kingsley Int'l Pictures Corp. v. Regents of the Univ. of the
   State of N.Y.*,
   360 U.S. 684 (1959) ....................................................... 18

*Koala v. Khosla,*
  931 F.3d 887 (9th Cir. 2019) ............................................................ 13

*La. Debating & Literary Ass'n v. City of New Orleans,*
  42 F.3d 1483 (5th Cir. 1995) ............................................................ 27

*Libertarian Party of L.A. Cnty. v. Bowen,*
  709 F.3d 867 (9th Cir. 2013) .............................................................. 7

*Lopez v. Candaele,*
  630 F.3d 775 (9th Cir. 2010) .............................................................. 9

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ......................................................................... 28

*Mulholland v. Marion Cnty. Election Bd.,*
  746 F.3d 811 (7th Cir. 2014) ................................................ 25-26, 27

*NLRB v. Catholic Bishop of Chi.,*
  440 U.S. 490 (1979) ......................................................................... 10

*Novak v. United States,*
  795 F.3d 1012 (9th Cir. 2015) .......................................................... 17

*Nunez by Nunez v. City of San Diego,*
  114 F.3d 935 (9th Cir. 1997) ........................................................ 18-19

*Ockletree v. Franciscan Health Sys.,*
  317 P.3d 1009 (Wash. 2014) .............................................................. 4

*Ohio Civil Rights Commission v. Dayton Christian Schools,*
  477 U.S. 619 (1986) ......................................................................... 11

*Oklevueha Native Am. Church of Haw., v. Holder,*
  676 F.3d 829 (9th Cir. 2012) ............................................................ 20

*PDX N., v. Comm'r N.J. Dep't of Lab. & Workforce Dev.,*
  978 F.3d 871 (3d Cir. 2020) ....................................................... 23, 27

*Prete v. Bradbury,*
  438 F.3d 949 (9th Cir. 2006) .......................................................... 7, 8

*R.A.V. v. City of St. Paul,*
 505 U.S. 377 (1992) ....................................................................... 3, 18

*ReadyLink Healthcare v. State Compensation Insurance
 Fund,*
 754 F.3d 754 (9th Cir. 2014) ............................................................ 24

*San Jose Silicon Valley Chamber of Commerce Political
 Action Committee v. City of San Jose,*
 546 F.3d 1087 (9th Cir. 2008) .......................................................... 24

*Sexton v. NDEX W., LLC,*
 713 F.3d 533 (9th Cir. 2013) ............................................................ 29

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health
 Care,*
 968 F.3d 738 (9th Cir. 2020) ............................................................ 21

*Sprint Commc'ns v. Jacobs,*
 571 U.S. 69 (2013) ..................................................................... 23, 26

*Stormans v. Selecky,*
 586 F.3d 1109 (9th Cir. 2009) .......................................................... 19

*Susan B. Anthony List v. Driehaus,*
 573 U.S. 149 (2014) ........................................................... 2, 8, 19, 21

*Telco Commc'ns v. Carbaugh,*
 885 F.2d 1225 (4th Cir. 1989) .......................................................... 27

*Thomas v. Anchorage Equal Rights Comm'n,*
 220 F.3d 1134 (9th Cir. 2000) ....................................................... 9, 19

*Tingley v. Ferguson,*
 47 F.4th 1055 (9th Cir. 2022) ..................................................... *passim*

*Twitter v. Paxton,*
 56 F.4th 1170 (9th Cir. 2022) .......................................................... 12

*Uzuegbunam v. Preczewski,*
 141 S. Ct. 792 (2021) ...................................................................... 15

*Vegan Outreach v. Chapa*,
   454 F. App'x 598 (9th Cir. 2011) ........................................ 17

*Vitagliano v. County of Westchester*,
   ___ F.4th ___, 2023 WL 4095164 (2d Cir. June 21, 2023) .................... 6

*Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund*,
   445 P.3d 533 (Wash. 2019) ................................................ 13

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ........................................... 12

*Whole Woman's Health v. Jackson*,
   142 S. Ct. 522 (2021) ................................................ 4, 5

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) ........................................ 6, 16

*Wood v. Frederick*,
   No. 21-12238, 2022 WL 1742953 (11th Cir. May 31, 2022) .............. 28

*Woods v. Seattle's Union Gospel Mission*,
   481 P.3d 1060 (Wash. 2021) ............................................. 2

*Younger v. Harris*,
   401 U.S. 37 (1971) .................................................... 29

## Statutes

Cal. Civ. Code § 1748.1 .................................................... 16

RCW 49.60.030(2) ......................................................... 8

**INTRODUCTION**

The Washington Attorney General wants to investigate how a religious university applies religious policies to its employees. But the state law he wants to apply violates the First Amendment, as does the sweeping investigation he started to enforce that law. So Seattle Pacific University came to federal court to challenge that unconstitutional law, as well as the AG's effort to use that law to justify his unprecedented, invasive investigation into religious employment practices. Now the AG is strenuously avoiding the oversight of federal courts. His argument boils down to this: SPU's federal case is too early until the moment it is too late, so state court is the only forum for SPU's First Amendment claims.

This Court's precedents say otherwise. SPU brought its challenge at the right time: shortly after Washington courts narrowed the state law in a way that creates First Amendment conflicts, and just after the AG threatened enforcement against SPU. SPU brought that challenge in the right way: a pre-enforcement challenge to state law, as well as a direct challenge to the AG's entangling and retaliatory probe into its religious hiring practices. And SPU brought that challenge in the right place: federal courts can decide whether state laws violate the Constitution and enjoin state officials, providing redress to SPU.

The AG's response is full of atmospherics but devoid of correct application of the law. Federal courts have developed detailed tests to

1

govern standing, ripeness, and abstention. The AG fails all of them. So he relies on vague notions of comity, claims his investigation is a tentative and harmless letter but also an important state proceeding, and cites a grab-bag of abstention doctrines. He does all this while repeatedly departing from—or outright ignoring—binding precedent.

SPU's rights are being violated now, and SPU brought its case at the right time. The district court's decision was wrong on both standing and abstention. That decision should be reversed, and this case should proceed.

## ARGUMENT

### I. SPU has standing and its case is ripe.

#### A. SPU has an injury in fact for a pre-enforcement challenge.

SPU can challenge the application of the WLAD to its religious hiring standards. As the parties agree, in pre-enforcement cases, injury in fact exists if the plaintiff shows (1) conduct "arguably affected with a constitutional interest"; (2) that conduct is "arguably proscribed by the statute [it] wish[es] to challenge"; and (3) a "credible threat of enforcement." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160, 162, 167 (2014) (cleaned up); *see* Resp.24-25.

All three elements are satisfied:

1. SPU's religious hiring policy—which requires full-time employees to abide by SPU's beliefs on marriage—is religious exercise protected by the First Amendment, Br.17-18;

2. The WLAD, as interpreted in *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060 (Wash. 2021), prohibits sexual-orientation

discrimination in employment, except for "ministers" under the First Amendment's ministerial exception, and thus at least arguably proscribes SPU's conduct, Br.18-20; and

3. There is a credible threat of enforcement, demonstrated most vividly by the AG's letter telling SPU that its policies "prohibiting same-sex marriage and activity" may "violate the [WLAD]" and "opening an inquiry" against it, Br.21-24; ER-106-09.

This case thus fits comfortably within the "years of Ninth Circuit and Supreme Court precedent recognizing the validity of pre-enforcement challenges to statutes infringing upon constitutional rights." *Cal. Pro-Life Council v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003); *accord, e.g.*, *Tingley v. Ferguson*, 47 F.4th 1055, 1066-70 (9th Cir. 2022), *reh'g denied*, 57 F.4th 1072 (9th Cir. 2023), *petition for cert. filed* (Mar. 27, 2023).

The AG's contrary arguments are meritless. First, the AG repeatedly characterizes this case as improperly "challeng[ing] the Washington Supreme Court's decision in *Woods*." Resp.16; *see also id.* at 1, 11, 17. But SPU isn't challenging *Woods*—SPU is challenging the constitutionality of the WLAD, *as interpreted by Woods*. The Washington Supreme Court's interpretation of the WLAD in *Woods* is binding on federal courts. *See, e.g.*, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992). The question isn't whether *Woods* was right but whether the WLAD (so interpreted) violates the First Amendment. *See, e.g.*, *id.* (ordinance as construed by state supreme court violated First Amendment); *Hall v. Florida*, 572 U.S. 701, 704, 711-12 (2014) (state supreme court's "narrow[]" interpretation

3

of state statute rendered it unconstitutional under federal constitution); *see also* U.S. Const., art. VI (Supremacy Clause).[1]

Next, the AG notes that pre-enforcement cases don't "disregard the traditional limits on the jurisdiction of federal courts." Resp.24 (quoting *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 537-38 (2021)). True enough, but in pre-enforcement challenges, the *Driehaus* test applies—a "relaxed" standard for First Amendment claims. *Tingley*, 47 F.4th at 1066-67. In this context, "the inquiry tilts dramatically toward a finding of standing." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018).

In fact, while the AG repeatedly cites *Jackson* for general standing propositions in suits against state officials, that case if anything supports SPU. There, the Supreme Court "*approve*[*d*]" "pre-enforcement

---

[1]  The AG claims that "religious employers have been subject to potential liability under the WLAD for nearly a decade, following the Washington Supreme Court's 2014 decision in *Ockletree*." Resp.29. He quotes a single-justice concurrence, part of which represents the narrowest ground of agreement in the fractured (4-4-1) *Ockletree* opinion. *Compare* Resp.4 (quoting *Ockletree v. Franciscan Health Sys.*, 317 P.3d 1009, 1028 (Wash. 2014)), *with Ockletree*, 317 P.3d at 1028 ("I agree in part with the lead opinion's conclusion[.]"). That concurrence uses a test similar to Title VII's, which SPU does not challenge. In contrast to the AG's position, the concurrence emphasizes a concern with religious entanglement and makes clear that the only WLAD claims permitted against a religious nonprofit employer are those where the job is "*wholly* unrelated" to religion and "there is *no* relationship between [the employee's] duties and religion or religious practices." *Ockletree*, 317 P.3d at 1028 (Wiggins, J., concurring) (emphasis added).

4

challenges" against defendants who appeared to have "enforcement authority" under the challenged law. 142 S. Ct. at 537-38 (emphasis added); *see id.* at 535-37 (plurality); *id.* at 544 (Roberts, C.J., concurring in part and dissenting in part). It rejected such challenges only against defendants who *lacked* enforcement authority. *Id.* at 534-35. Here, the AG is "authorized to enforce the WLAD." Resp.44 (cleaned up). So *Jackson* doesn't help him.

Turning to *Driehaus*, the AG doesn't contest that SPU's conduct is at least arguably affected with a constitutional interest. *Cf.* Resp.25-29. And his arguments as to the other two elements fail.

First, the AG contends SPU's conduct isn't arguably proscribed because the WLAD permits religious hiring standards for "ministerial employees." Resp.25. But this misses the point—the complaint is explicit that SPU applies its policy to *all* faculty and staff (save student and temporary employees), ministers or not. ER-82-83 ¶¶ 29-31; ER-93-95 ¶¶ 85-102; *see also* ER-72 (AG: "SPU's Amended Complaint fails to deny that it has non-ministerial employees who are subject to the policy that restricts employment on the basis of sexual orientation."). The AG claims that he has not yet determined whether SPU's conduct violates the WLAD. Resp.1, 25. To the contrary, he has said that "prohibiting same-sex marriage and activity" constitutes "discrimination on the basis of sexual orientation," ER-106, and that "the First Amendment['s] ... protections do not extend to discrimination against

any [of] the University's non-ministerial employees," ER-91 ¶ 74.[2] *See Braidwood Mgmt. v. EEOC*, ___ F.4th ___, 2023 WL 4073826, at *11 (5th Cir. June 20, 2023) (finding pre-enforcement standing where "[w]e know what the EEOC says violates its guidance and the law; we know what Braidwood's exact policies are; and we have admissions from the EEOC that Braidwood's current practices violate Title VII").

Next, the AG says there's no credible threat of enforcement because the investigation letter isn't a "specific warning" and "there is no history of past prosecution or enforcement" against religious employers. Resp.27, 29. But even if so, a specific warning is not required. *See* Br.21-23 (collecting cases); *Wolfson v. Brammer*, 616 F.3d 1045, 1059 (9th Cir. 2010) (finding standing where plaintiff had "never been threatened with enforcement proceedings"); *see also Vitagliano v. County of Westchester*, ___ F.4th ___, 2023 WL 4095164, at *7 & n.5 (2d Cir. June 21, 2023) (per curiam) ("[T]he Supreme Court and at least four other circuits have sustained pre-enforcement standing without a past enforcement action or an overt threat of prosecution directed at the plaintiff." (collecting

---

[2] The AG later repackages this arguable-proscription argument, claiming SPU hasn't shown a "'concrete plan' ... that it would violate the law" absent "details about any job applicant, particular job, [or] history of SPU's enforcement of its employment policies." Resp.26. This fails for the same reasons. "Because [SPU is] maintaining policies that 'are presently in conflict with'" the WLAD, as understood by the AG, SPU is "deemed to have articulated a concrete plan to violate it." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021); *see* Br.21.

cases)); *Braidwood*, 2023 WL 4073826, at *11 (one instance of past enforcement history enough).

Indeed, far from requiring a plaintiff-specific threat, this Court's cases "interpret[] the government's failure to *disavow* enforcement of the law as weighing in favor of standing." *Tingley*, 47 F.4th at 1068. SPU pointed out as much in its opening brief, Br.23-24; the AG responds by once again refusing to disavow, Resp.28.

SPU doesn't need the letter to establish pre-enforcement standing, but the letter is far more specific and threatening than government actions that have sufficed as specific threats previously. *Arizona v. Yellen* involved a pre-litigation letter that said the law would *not* be enforced "in the way [the plaintiffs] feared"—yet it still "evince[d] an intent to enforce." 34 F.4th 841, 850 (9th Cir. 2022). In *Bowen*, the state official merely "posted on her website a set of instructions" reiterating the challenged statute's requirements—which amounted to "communicat[ing] a specific warning or threat of enforcement." *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 871 (9th Cir. 2013). The letter here—which confirms SPU's feared reading of the statute and seeks documents facilitating enforcement—makes this case even more straightforward.

In fact, the letter is virtually identical to the "inquiry letters" that were "sufficient to establish standing" in *Prete v. Bradbury*, 438 F.3d 949, 952 n.3 (9th Cir. 2006). There, plaintiffs sued after the "Elections Division

7

office sent inquiry letters ... advising plaintiffs that [it] had received complaints" of violations and "request[ing] additional information." *Id.* at 952. Although "the inquiry letters did not threaten prosecution," the "receipt of the inquiry letters" was nonetheless "sufficient to establish a 'credible threat' that [the challenged law] will be invoked against" the plaintiffs for purposes of pre-enforcement standing. *Id.* at 952 n.3 (cleaned up). So too here; *Prete* is on all fours. *Cf.* Resp.27-28 (arguing letter "makes no threat of prosecution" but merely "ask[s] for information" in light of complaints).

If even this weren't enough (and it is), "[t]he credibility of th[e] threat" here "is bolstered by the fact" that the WLAD is enforceable not just by "state officials" but also by private complainants. *Driehaus*, 573 U.S. at 164; *see* Br.22-23; RCW 49.60.030(2). Indeed, such a private complainant has already sued. Br.22; *see* SER-145-59. In response, the AG contends that the availability of private enforcement cuts *against* standing because relief against the AG wouldn't stop private enforcement. But this gets things backwards. Courts have repeatedly held that potential private enforcement helps to establish a credible threat—even when the only defendant is the government. *See, e.g.*, *Driehaus*, 573 U.S. at 164; *Italian Colors*, 878 F.3d at 1173; *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021) (mechanism for private complaints supported injury), *cert. granted on different question*, 142 S. Ct. 1106, *argued* (Dec. 5, 2022); *Balogh v. Lombardi*, 816 F.3d 536, 542 (8th Cir. 2016) (private

right of action supported injury). It doesn't undermine redressability, either—more on that below.

Finally, the AG lists drive-by citations to other cases, all of which predate *Driehaus* and none of which apply here. *See* Resp.25, 28. Unlike in *Carrico*, SPU has explained exactly what it "would like to do"—continue requiring its employees (ministers or not) to adhere to its religious conduct policy. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1007 (9th Cir. 2011). *Thomas* doesn't apply where a plaintiff's "policies are presently in conflict" with the challenged law. *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1237 (9th Cir. 2018) (distinguishing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) (en banc)). And in *Lopez*, the challenged law didn't even "arguably appl[y] to [the plaintiff's] past or intended future speech," and the defendant expressly "indicated that [it] did not intend to take any action against" the plaintiff, *Lopez v. Candaele*, 630 F.3d 775, 790-92 (9th Cir. 2010)—neither of which is true here.

SPU has injury in fact for its pre-enforcement challenge.

## B. SPU has an injury in fact for its investigation and retaliation claims.

Most of SPU's claims are pre-enforcement challenges, and they meet the *Driehaus* test. But it has two other types of claims: constitutional challenges to the AG's inquiry into internal religious matters (Counts III,

9

IV, V, and VII) and First Amendment retaliation (Counts I and XI). Br.11-12.

SPU has already explained at length why the probe itself is constitutionally problematic under *Catholic Bishop* and *Duquesne*. SPU has an injury stemming from the inquiry, since "[i]t is not only the conclusions that may be reached by the [AG] which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions." *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 502 (1979). In *Catholic Bishop*, the Supreme Court narrowed NLRB's jurisdiction because it saw "no escape from conflicts flowing from the Board's exercise of jurisdiction over teachers in church-operated schools and the consequent serious First Amendment questions that would follow." *Id.* at 504. The AG makes no response at all to *Catholic Bishop*, even though SPU relied upon it extensively and it is the leading Supreme Court case on this issue. *See* Br.25, 28, 52-53.

The AG also waves off *Duquesne*, dismissing it as a statutory construction case. Resp.30-31. But the D.C. Circuit, applying *Catholic Bishop*, adopted a narrowing construction "[t]o avoid the First Amendment concerns raised by the Board's new policy" of exercising jurisdiction over the faculty hiring decisions of a religious university. *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 831 (D.C. Cir. 2020). In light of these precedents, SPU has at minimum pleaded a

constitutional injury from the AG's probe, redressable by an injunction against that probe. Br.25-28.

The AG uses *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619 (1986), to defend the scope of his probe. Resp.29-30. That was a *Younger* abstention case, and it's not relevant here because it involved "the actual filing of the administrative action threatening sanctions" after an investigation, finding of probable cause, and attempted conciliation. *Dayton*, 477 U.S. at 626 & n.1; *see also* Br.43-45 (distinguishing *Dayton*). The Supreme Court refused to make any determination of "how[] Dayton's constitutional claim should be decided on the merits," while noting that Dayton could raise its constitutional defenses and the commission could investigate "whether the ascribed religious-based reason was in fact the reason for the discharge." 477 U.S. at 628. That employee-specific determination is a far cry from the AG's sweeping probe; it parallels the type of employee-specific proceeding that SPU described as proper for non-ministerial employees. Br.36, 39-40. The AG's investigation is far closer to the aggressively entangling agency action in *Catholic Bishop* and *Duquesne* than to the limited employment claim in *Dayton*.

The AG also claims SPU is not injured because there are no consequences for ignoring the letter. Br.31. He simultaneously claims that (1) he acted "[p]ursuant to [his] duty to investigate allegations of discrimination and enforce state law," Resp.7, and (2) the "inquiry is an

11

ongoing quasi-criminal enforcement action" against SPU, Resp.43. Because investigations themselves can violate the Religion Clauses, and the AG acknowledges the seriousness of his investigation, SPU has properly pleaded an injury in fact stemming from the AG's investigation.

For similar reasons, SPU's retaliation claims are different from those in *Twitter v. Paxton*, 56 F.4th 1170 (9th Cir. 2022). There, Texas's civil investigative demand was not constitutionally problematic by nature; there was no similar entanglement concern. Here, the AG claims that the investigation is "an ongoing quasi-criminal enforcement action." Resp.43. This makes the case more like *White v. Lee*, where "the plaintiffs would have had no opportunity to challenge any aspect of the investigation until formal charges were brought, at which point they could have faced a large fine." *Twitter*, 56 F.4th at 1177 (citing *White v. Lee*, 227 F.3d 1214, 1222 (9th Cir. 2000)). SPU likewise fears that it will have no recourse until the AG files formal proceedings, at which point it will face significant penalties for its longstanding—and constitutionally protected—religious hiring policy.

*White* is also more apposite than *Twitter* because it involved "the protection that the First Amendment affords to individuals who petition the government for redress of grievances through the courts." *White*, 227 F.3d at 1231. *Twitter* involved alleged retaliation for its content moderation decisions, 56 F.4th at 1172, whereas *White*, like this case, involved retaliation for going to court to protect one's rights, 227 F.3d at

12

1230-31. Here, after SPU filed its case, the AG issued a press release calling for more complaints against SPU. ER-101-02 ¶¶ 172-78. Having the state's highest law enforcement official publicly call for yet more complaints can only be described as an action that would "chill a person of ordinary firmness from continuing to engage in the protected activity." *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019).

Finally, the AG argues that SPU suffers no harm because it can bring a claim in state court and because an employee previously sued it in state court. But SPU is under no obligation to bring its exclusively federal claims in state court just because the AG would prefer to defend his actions there. The AG is surely aware that Washington courts, like federal courts, have an injury-in-fact requirement for standing. *See, e.g.*, *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund*, 445 P.3d 533, 540 (Wash. 2019) ("The injury in fact part of the standing test precludes those whose injury is speculative or abstract, rather than actual, from bringing an action."). The AG cannot simultaneously argue that SPU lacks an injury but has an alternative way to defend its rights in state court.

### C. SPU's injuries are redressable in federal court.

SPU sued over violations of federal law; the district court can order several forms of effective relief; and the AG's plan to investigate every employment position at SPU runs into significant constitutional problems. Br.33-40. The AG's response attacks straw men rather than

13

these arguments (or the text of the complaint). The AG's arguments fail for three reasons: (1) the district court can issue relief without investigating every employee up front, (2) even partial redressability is sufficient, and (3) the district court can enjoin a state law that, as construed, violates the Constitution.

***No investigation necessary.*** The AG leans heavily on the notion that the district court would have to investigate and decide up front which SPU employees are ministers. Resp.21-22. But SPU asked for a "permanent injunction prohibiting the attorney general … from enforcing the WLAD against Seattle Pacific's religious belief and conduct requirements for employees, *regardless of ministerial status*." ER-103 ¶ h (emphasis added); *see* Br.36. The district court need not decide who is a minister to order that relief. This alone is a reason to reverse—and the AG doesn't respond to this argument.

The district court can also issue a more limited injunction without parsing which SPU employees are ministers. Br.35-36. It can restrain the AG's current global investigation and allow the AG to pursue individual claims where warranted. Br.36, 39. The AG's response agrees with SPU on one thing: courts decide ministerial exception defenses on a case-by-case basis. That's why a probe of every position is constitutionally problematic, as SPU explained. Br.24-29, 38. But the AG believes this entitles him to troll through years of employee data to make his own fact-intensive determinations about who is a minister. Conspicuously, the AG

14

provides no First Amendment precedent to support his sweeping probe, relying instead on his power to enforce state law generally. As discussed above, he makes no response to *Catholic Bishop*, and only a passing attempt to distinguish *Duquesne*.

SPU's injuries are thus redressable by multiple forms of injunctive relief with a declaratory judgment: an injunction prohibiting the AG from penalizing SPU for its religious employment policy, regardless of which employees are ministers, ER-103 ¶ h; an injunction stopping the AG from penalizing SPU over its hiring of ministerial employees, which would not prevent an appropriately targeted assessment of a complaint by an alleged non-ministerial employee, ER-103 ¶ g; or an injunction against the AG's unconstitutional probe, requiring him to proceed as employment cases normally do, with a particular complainant, ER-103 ¶ f. Any one of those remedies is sufficient to allow SPU's claims to proceed. SPU properly pleaded all three.

***Even partial redress is enough.*** The AG claims that this lawsuit would not redress SPU's injuries because private parties can also enforce the WLAD. That's foreclosed by binding precedent: "[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021). In *Uzuegbunam*, nominal damages of "a single dollar" were sufficient redress. *Id.*

SPU would receive significant redress from an injunction and declaratory relief against the AG—certainly more redress than the

*Uzuegbunam* plaintiff. SPU would be shielded from the state official who is threatening enforcement now, and it would be protected from an intrusive and entangling inquiry into years' worth of religious employment decisions.

That is more than enough to "obtain a measure of relief. A plaintiff meets the redressability requirement if it is likely, although not certain, that his injury can be redressed by a favorable decision." *Wolfson*, 616 F.3d at 1056. This also disproves the AG's attempt to distinguish *Wolfson*. He argues that *Wolfson* was decided on the grounds that an injunction "would entirely prevent enforcement." Resp.19. But *Wolfson* doesn't say that this is the only circumstance in which redressability exists—it says the opposite. *Wolfson* is applicable to the point for which SPU cited it: federal courts can order injunctions and provide redress against unconstitutional state laws, even if they cannot change the law itself. Br.34.

The AG's argument is also directly contrary to *Italian Colors*. There, the Ninth Circuit found standing because—not in spite of—the fact that "even if the Attorney General would not enforce the law, Section 1748.1(b) gives private citizens a right of action to sue for damages." 878 F.3d at 1173. Notably, that statute permitted consumers to sue "in small claims court," Cal. Civ. Code § 1748.1, yet this did not deprive plaintiffs of standing.

The AG's argument, taken to its logical conclusion, would remove all manner of statutes from federal court review. Any time a statute provided for a private right of action, it would be immune from pre-enforcement challenge because the plaintiff cannot restrain all potential litigants. That is not the law, and the AG cites no case to the contrary.

The AG's cases are inapplicable. In the non-precedential order in *Vegan Outreach*, the requested relief "would restrain only Ms. Chapa and could not bind … any official other than" a single low-level administrator. *Vegan Outreach v. Chapa*, 454 F. App'x 598, 601 (9th Cir. 2011). By contrast, SPU has sued the state's highest law-enforcement official and sought relief that would restrain him and those working for him. *Novak* and *Glanton* both involved lawsuits where a plaintiff claimed that the injunction might lower prices, but the prices were set by third parties not before the court. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS*, 465 F.3d 1123, 1125 (9th Cir. 2006). The problem in those cases was that their redress was wholly dependent on the actions of non-parties. Not so here: an injunction against the AG would stop him from carrying out an ongoing probe and from penalizing SPU for its protected conduct. As *Novak* acknowledged, a plaintiff need only show "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." 795 F.3d at 1020. SPU has shown just that.

***It's a federal case.*** Finally, the AG argues there is no redressability because federal courts cannot change the Washington Supreme Court's decision in *Woods*. The AG is conflating a constitutional challenge with a collateral one. Federal courts have the power to decide whether a state law, as authoritatively interpreted by the state's highest court, runs afoul of the Constitution. *See, e.g.*, *R.A.V.*, 505 U.S. 377; *Kingsley Int'l Pictures Corp. v. Regents of the Univ. of the State of N.Y.*, 360 U.S. 684 (1959). SPU has alleged that the WLAD, as interpreted in *Woods*, violates the First Amendment.

The AG nevertheless argues that *Woods* controls SPU's constitutional claims. To agree with the AG, the Court would first have to figure out what federal law issues the Washington Supreme Court decided—the AG doesn't say—and then accept that the Washington Supreme Court's determination of federal law is binding on federal courts, even in future cases involving different litigants. The only precedent cited for this remarkable proposition is *ASARCO v. Kadish*, which provides for Supreme Court review of a state court decision otherwise binding on the parties to that case. 490 U.S. 605, 622 (1989).

The AG's argument is directly contrary to binding Ninth Circuit precedent: "we must construe the ordinance as it has been interpreted by the California state courts. We are not similarly bound, however, to the state court's analysis of the constitutional effect of that construction." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 942 (9th Cir. 1997)

18

(internal citation omitted). SPU's injuries are redressable, and its case can proceed.

**D. SPU's claims are ripe.**

The AG argues that the case is unripe. He is wrong. The AG acknowledges that the constitutional ripeness analysis is the same as injury in fact for standing. Resp.36. Constitutional ripeness thus exists for the reasons standing exists. *Supra* Sections I.A, I.B.

Prudential ripeness is "discretionary." *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1154 (9th Cir. 2017). Where the plaintiff has "alleged a sufficient Article III injury," dismissal for lack of prudential ripeness is in "tension with … the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Driehaus*, 573 U.S. at 167 (cleaned up) (questioning "the continuing vitality of the prudential ripeness doctrine"). Prudential ripeness thus should not apply.

In any event, SPU's claims are prudentially ripe. Prudential ripeness considers (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141. Both prongs are met.

***Fitness.*** The fitness prong is met where "the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). Each factor is present here.

Like most pre-enforcement First Amendment challenges, SPU's pre-enforcement claims present primarily legal issues and no further factual development is necessary. *See, e.g.*, *Tingley*, 47 F.4th at 1070. SPU's pre-enforcement claims "present a concrete factual situation" for the Court "to delineate the boundaries of what conduct the government may or may not regulate without running afoul of the Constitution." *Alaska Right to Life PAC v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) (cleaned up). And SPU's complaint "provide[s] enough of a specific factual context for the legal issues [SPU] raises." *Tingley*, 47 F.4th at 1070; *see also, e.g.*, *Bishop Paiute*, 863 F.3d at 1154 (fitness met where complaint "present[ed] a detailed factual account of the underlying disputes").

The same is true of SPU's investigation and retaliation claims. The AG relies on the idea that courts must first investigate which of SPU's employees are ministers. Resp.37. That's wrong for multiple reasons. *See supra* pp.14-15; Br.35-37. And "[t]he scope of any injunctive relief to which [SPU] might ultimately be entitled may be determined at a later phase of the litigation." *Oklevueha Native Am. Church of Haw. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (finding case prudentially ripe).

SPU challenges final action—which the AG does not contest. Courts consider whether the action "has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Tingley*, 47 F.4th at 1070. The WLAD, as interpreted in *Woods*, has the

"status of law." *Id.* And state nondiscrimination laws require immediate compliance with their terms.

**Hardship.** Because SPU's claims satisfy the fitness prong, this Court need not consider hardship. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 753 (9th Cir. 2020). Even so, SPU's hardship weighs decisively in favor of immediate review. SPU alleges that the AG's actions are chilling its First Amendment activity. ER-90 ¶ 65; ER-101 ¶ 165. This is sufficient hardship. *See Driehaus*, 573 U.S. at 167-68; *Tingley*, 47 F.4th at 1071. The AG's only argument is that SPU's claims are not redressable. Resp.39. But they are. *See* Br.33-40; *supra* Section I.C. SPU's claims are prudentially ripe.

## II. *Younger* **abstention does not apply.**

*Younger* abstention applies only where a state proceeding falls into one of the *Sprint* categories and satisfies all three *Middlesex* factors. *See Applied Underwriters v. Lara*, 37 F.4th 579, 588 (9th Cir. 2022); Br.41. The parties dispute three aspects of this test: (1) whether the AG's investigation falls into the quasi-criminal category (*Sprint*); (2) whether the proceeding is "ongoing" (first *Middlesex* factor); and (3) whether SPU can raise its constitutional challenges in the proceeding (third *Middlesex* factor). The AG must satisfy all three, but he has satisfied zero. *Younger* does not apply.

The AG claims his standalone investigation triggers *Younger*. According to him, a state official's investigation into potential

21

wrongdoing is not enough to create a credible threat of enforcement, Resp.27-28, but is enough to invoke comity concerns and *Younger* abstention, Resp.43-50. He asks the Court to discount a potential future state court case for standing purposes, but he tries to bootstrap his investigation to those potential future proceedings for *Younger* abstention purposes. No precedent allows that. In considering the AG's *Younger* argument, this Court must take the AG's investigation for what it is: an overbroad, entangling investigation (1) by a state official powerless to adjudicate a claim or impose sanctions (2) that has not yet generated state judicial or quasi-judicial administrative proceedings and (3) that leaves SPU unable to raise constitutional challenges.

Each of these aspects of the AG's investigation makes *Younger* inapplicable. First, the AG's investigation is not a quasi-criminal enforcement proceeding because he has no adjudicatory authority to sanction SPU. Br.42-46. Second, even if the AG's investigation qualifies as a proceeding, such proceeding is not "ongoing" absent formal state court or quasi-judicial administrative proceedings, as the overwhelming weight of authority (five circuits) holds. Br.46-51. Third, the AG's investigation does not provide SPU an adequate opportunity to raise its constitutional challenges. Br.51-55.

## A. This is not a quasi-criminal enforcement proceeding.

The AG's investigation is not akin to a criminal prosecution because the AG lacks the ability to sanction SPU in any way; he has no

adjudicatory authority over complaints or the power to issue sanctions under the WLAD. Br.43-44. A state civil enforcement proceeding is "'akin to a criminal prosecution" when it involves a state actor, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges," and they are "characteristically initiated to sanction the federal plaintiff … for some wrongful act." *Sprint Commc'ns v. Jacobs,* 571 U.S. 69, 79-80 (2013). "Sanctions are retributive in nature and are typically imposed to punish the sanctioned party 'for some wrongful act.'" *PDX N. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 884 (3d Cir. 2020). The AG lacks this power.

The AG doesn't claim he has the power to adjudicate or sanction. Instead, he attempts to bootstrap the current proceeding—his investigation—with contemplated future state court proceedings. The AG claims that merely opening an investigation categorically constitutes a quasi-criminal enforcement proceeding triggering *Younger*. *See* Resp.43-47. That's a vast expansion of *Younger*.

As SPU explained, Br.44-46, in each case the AG cites for his theory, the proceedings went far beyond "opening an inquiry" without "any determination" of wrongdoing, Resp.1. In *Bristol-Myers Squibb Co. v. Connors*, *six years* of state court litigation followed the AG's investigation. 979 F.3d 732, 735 (9th Cir. 2020). In *Citizens for Free Speech v. County of Alameda*, a formal abatement proceeding, alleged violations of ordinances, and a notice to appear before a zoning board

followed the county's investigation. 953 F.3d 655, 656-57 (9th Cir. 2020). And in *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, a finding of campaign finance violations, a public reprimand, and a fine followed the agency's investigation. 546 F.3d 1087, 1089 (9th Cir. 2008). That's in sharp contrast to cases still at the investigation stage. In *ReadyLink Healthcare v. State Compensation Insurance Fund*, this Court said that "the mere 'initiation' of a judicial or quasi-judicial administrative proceeding" is not "an act of civil enforcement." 754 F.3d 754, 760 (9th Cir. 2014).

Without the bootstrapping, the AG is left with a state investigation but no independent power to sanction SPU. To get around the fact that he has no power to sanction, the AG relies upon an out-of-context snippet of dictum in *Bristol-Myers*. He claims that sanctions are not required because *Bristol-Myers* characterized *Sprint* as considering "features that are typically present" but not "prescribing criteria that are always required." Resp.46 (quoting *Bristol-Myers*, 979 F.3d at 737). But *Bristol-Myers* had multiple "characteristics of a civil enforcement action"—most notably, state court litigation had been ongoing for six years, where "the State [sought] civil penalties and punitive damages to sanction the companies." *Id.* at 736, 738. The federal plaintiffs quibbled over whether the penalties really counted as sanctions, but this Court determined that "[o]n its face, the action fit[] comfortably within the [general] class of

cases described in *Sprint*," so *Younger* abstention applied and this Court would not inquire further. *Id* at 738.

Placed in context, the snippet of *Bristol-Myers* dictum does not support the argument that every state investigation, even without the power to sanction, counts as a quasi-criminal action. No case does. As this Court later said, "in every case of the civil enforcement genre cited by *Sprint* where *Younger* abstention was found to be valid, the parallel proceedings were … aimed at punishing some wrongful act through a penalty or sanction." *Lara*, 37 F.4th at 589.

In *Lara*, this Court held that a state proceeding brought after an investigation did not trigger *Younger* because it was not brought to sanction the federal plaintiff but rather to ensure "adequate protection of policyholders and the public." *Id.* at 588-89, 590. As the Court explained, the ability to sanction "is the quintessential feature of a *Younger*-eligible 'civil enforcement action.'" *Id.* at 589. And this Court has made clear that "federal courts cannot ignore *Sprint*'s strict limitations on *Younger* abstention." *Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018).

This Court's emphasis on sanctions is consistent with other circuits. The Third Circuit treats sanctions "as essential"—"a necessary condition for a quasi-criminal proceeding." *Borowski v. Kean Univ.*, 68 F.4th 844, 851 (3d Cir. 2023). So too has the Seventh Circuit. *See Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014) (refusing to abstain because agency's "authority to sanction offenders [wa]s

extremely limited—far less than the state proceedings that have warranted *Younger* abstention in other cases"). Abstaining here would not only contradict this Court's precedent but also create a circuit split.

The AG's investigation in no way "resemble[s] the state enforcement actions" the Supreme Court or this Court "has found appropriate for *Younger* abstention." *Sprint*, 571 U.S. at 80. Because the investigation is not a quasi-criminal enforcement proceeding, *Younger* abstention does not apply.

## B. Even if the AG's investigation were a quasi-criminal proceeding, it is not "ongoing."

Even in a true quasi-criminal proceeding, *Younger* abstention applies "only if" the *Middlesex* factors "are also met." *Lara*, 37 F.4th at 588. The Supreme Court has warned against "extend[ing] *Younger* to virtually all parallel state and federal proceedings," which would be "irreconcilable with [the Supreme Court's] dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Sprint*, 571 U.S. at 81-82.

The overwhelming weight of authority—five circuits—establishes that an investigation that has not yet resulted in charges or a state judicial or

administrative proceeding is not an ongoing quasi-criminal proceeding.[3] Br.46-51. The AG offers two responses; neither holds water.

First, he argues that SPU's citations involve administrative proceedings, not an AG investigation. Resp.45. This is a distinction without a difference. Following these precedents, the Fifth Circuit held the same in the context of an AG investigation—that the AG's "service of a non-self-executing subpoena" did not create an "ongoing" state proceeding under *Younger* where the AG had "not moved to enforce the administrative subpoena in any state court, nor has any judicial or quasi-judicial tribunal begun proceedings." *Google v. Hood*, 822 F.3d 212, 223-24 (5th Cir. 2016).

---

[3] *See PDX N.*, 978 F.3d at 886 (holding "initiation of an audit [wa]s insufficient to serve as an ongoing judicial proceeding for *Younger* purposes" because it "did not involve judicial oversight"); *Mulholland*, 746 F.3d at 813, 816-17 (holding "investigation [wa]s too preliminary a proceeding to warrant *Younger* abstention"); *Guillemard-Ginorio v. Contreras-Gómez*, 585 F.3d 508, 519 (1st Cir. 2009) (holding investigation "was at too preliminary a stage to constitute a 'proceeding' triggering *Younger* abstention" given agency hadn't yet issued an order against plaintiffs); *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1486-87, 1490-91 (5th Cir. 1995) (finding no ongoing proceeding where agency had only notified plaintiffs of administrative complaints, requested information, and proposed possible resolution); *Telco Commc'ns v. Carbaugh*, 885 F.2d 1225, 1228-29 (4th Cir. 1989) (finding no ongoing state proceeding where agency opened investigation because agency "never initiated a formal hearing" or "request[ed] a formal prosecution").

27

Second, the AG claims the Tenth and Eleventh Circuits have gone the other way. Resp.45-46. That is incorrect. In *Amanatullah v. Colorado Board of Medical Examiners*, months after the agency began investigating, the federal plaintiff received a "'30 day' letter," which formally initiated administrative proceedings and provided an opportunity "to answer or explain in writing the matters described in such complaint." 187 F.3d 1160, 1162-64 (10th Cir. 1999). And *Wood v. Frederick* concerned "state bar disciplinary proceedings conducted under the jurisdiction of a state supreme court." No. 21-12238, 2022 WL 1742953, at *1, *5 (11th Cir. May 31, 2022) (per curiam); *cf. Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 433 (1982) (holding state bar disciplinary proceedings are judicial in nature). Thus, in both cases formal administrative or judicial proceedings were underway—unlike the AG's investigation.

## C. The AG's investigation leaves SPU unable to raise a constitutional challenge.

Under the third *Middlesex* factor, the state proceeding must provide the federal plaintiff "an opportunity to fairly pursue [its] constitutional claims." *Juidice v. Vail*, 430 U.S. 327, 337 (1977). The AG's investigation does not.

As SPU explained, the WLAD is silent as to any opportunity to raise constitutional challenges during the AG's investigation. Br.51. And when SPU tried to raise them, the AG dismissed them out of hand. *See* ER-89

¶ 62; ER-114-15; *cf. Younger v. Harris*, 401 U.S. 37, 45 (1971) (factor not met if it "plainly appears that this course would not afford adequate protection"). SPU has borne its burden to show this factor is satisfied, and the AG's arguments fail.

The AG argues that SPU can "raise federal challenges in any litigation that may occur around its employment practices." Resp.48. But litigation that may or may not occur in the future is not the AG's investigation—the proceeding the AG claims triggers *Younger*. As SPU explained, the investigation itself violates SPU's First Amendment rights. *See* Br.52-54. The AG is acting as a potential litigant, not a neutral adjudicator who can decide SPU's rights. This Court should reject the AG's *Younger* argument.

Betraying the weakness of his *Younger* argument, the AG concludes his brief with a grab-bag of other abstention doctrines not raised below. Resp.49-50. He doesn't attempt to lay out the applicable legal tests or explain how they are satisfied. That's because they are not. *Rooker-Feldman* doctrine does not apply because SPU does not seek review of an underlying state-court judgment, *see, e.g., Benavidez v. County of San Diego*, 993 F.3d 1134, 1142-44 (9th Cir. 2021), and *Colorado River* abstention does not apply because there is no concurrent state-court lawsuit, *see, e.g., Sexton v. NDEX W., LLC*, 713 F.3d 533, 538 (9th Cir. 2013). Abstention is unwarranted.

29

# CONCLUSION

The decision below should be reversed.

Respectfully submitted,

/s/ *Lori H. Windham*

NATHANIEL L. TAYLOR
ABIGAIL ST. HILAIRE
ELLIS LI & MCKINSTRY, PLLC
1700 7th Ave., Suite 1810
Seattle, WA 98101
(206) 682-0565
*ntaylor@elmlaw.com*

LORI H. WINDHAM
JOSEPH C. DAVIS
DANIEL D. BENSON
LAURA WOLK SLAVIS
DANIEL M. VITAGLIANO*
THE BECKET FUND FOR
   RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
   Suite 400
Washington, DC 20006
(202) 955-0095
*lwindham@becketlaw.org*

*\* Not admitted to the D.C. bar; admitted to the N.Y. bar; supervised by licensed D.C. bar members.*

*Counsel for Plaintiff-Appellant*

30

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is 6,925 words, excluding the portions exempted by Fed. R. App. P. 32(f). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

/s/ *Lori H. Windham*
Lori H. Windham
*Counsel for Plaintiff-Appellant*

Dated: June 23, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, the foregoing brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Lori H. Windham*
Lori H. Windham
*Counsel for Plaintiff-Appellant*

Dated: June 23, 2023